This is an appeal by complainants from a decree of the superior court granting respondents relief not asked for by them, either in their answer or by way of cross-bill, and denying all of complainants' prayers except one.
The decree declares invalid a contract entered into on March 9, 1937, by and between the United Textile Workers of America, a voluntary unincorporated association, hereinafter referred to as the U.T.W.A., and the Committee for Industrial Organization, hereinafter referred to as the C.I.O., setting up the Textile Workers Organizing Committee of the C.I.O., referred to hereinafter as the T.W.O.C. It further provides that the T.W.O.C. shall account for all monies received by it, while operating under such contract, and for all property of the U.T.W.A. which it has received during that time; and it enjoins the T.W.O.C. from further representing itself as affiliated with the U.T.W.A. or from engaging in organizing textile workers as the representative of the U.T.W.A. There are other provisions of the decree but, since they are dependent in the main upon those mentioned above, there is no need to recite them here.
The complainants set out in their claim of appeal generally that this decree is against the law, against the evidence, against the law and the evidence and the weight thereof; and specifically that each paragraph of the decree is erroneous in law and against the evidence.
In their brief and argument before us the complainants raised seven points based on these reasons of appeal, but from our examination of the pleadings and the evidence, we find it necessary to consider only the following: First, that the trial justice erred in holding that the complainants' right to relief was dependent upon the validity of the contract of March 9, 1937, between the U.T.W.A. and the *Page 104 
C.I.O.; and second, that the superior court was without jurisdiction on the pleadings before it to determine whether the president of the U.T.W.A. exceeded his powers under the constitution of that organization in signing such contract. We shall consider these two points more or less together.
The pleadings in this case are simple. Complainants Robert W. Gaffney, as regional director for Rhode Island of the T.W.O.C., and Walter J. Plante, as president of the Olneyville and Vicinity Joint Board of the T.W.O.C. of the C.I.O., acting on behalf of the said T.W.O.C. and said joint board and the members thereof, brought their bill of complaint against three individuals, Joseph Sylvia, Mary Taccone and Frank Dame, and also against the Providence Woonasquatucket Woolen Worsted District Council of the C.I.O. The bill alleged that under the name of this council these individual respondents had maliciously and intentionally converted to their own use and had deposited in the Union Trust Company, a banking institution in the city of Providence, a certain sum of money belonging to the Olneyville and Vicinity Joint Board of the T.W.O.C. of the C.I.O., which sum of money was on deposit in said bank in the name of such joint board, subject to withdrawal by the said Joseph Sylvia as director and Frank Dame as treasurer thereof. The Union Trust Company was also named as a respondent but only for the reason that it was the depositary of the allegedly converted funds.
The bill also alleged that, in July 1937, shortly after the date of the above contract, the T.W.O.C. issued a charter to the Olneyville and Vicinity Joint Board which was composed of six locals of the T.W.O.C. It further alleged that the T.W.O.C. had, on or about the month of March, 1937, retained and authorized the respondent Sylvia as an organizer and field representative to supervise its organizational work in the Olneyville area and, as such, he was paid by *Page 105 
such organization until June 25, 1938, on which date his services were dispensed with; that he received a notice on June 22, 1938 of such termination of his services and, that on or about June 24, 1938, he, acting in concert with respondents Taccone and Dame, transferred the funds of the Olneyville and Vicinity Joint Board, then on deposit with the respondent Union Trust Company, to a new account in said bank in the name of the Providence Woonasquatucket Woolen Worsted District Council of the C.I.O. The bill further alleged that no such organization as the Providence Woonasquatucket Woolen Worsted District Council of the C.I.O. existed, and that such name was used only as a means by which the respondents designed to secrete and convert to their own use the funds of the Olneyville and Vicinity Joint Board.
Complainants also averred that the respondents used the letters C.I.O. as part of the name of their pretended district council in order to mislead and deceive textile workers affiliated with the T.W.O.C. that they, the respondents, were agents of the C.I.O., and that by means of such deception they did wrongfully collect and retain the sum of $750 in dues from such workers; that the purpose of such deception was to disrupt the T.W.O.C. and also that, by such actions, the respondents had forfeited their rights and privileges of membership in the T.W.O.C. For the wrongs alleged, complainants averred that they were without a remedy at law and prayed that equity grant them an accounting for all of the property in the hands of the individual respondents, an injunction against disposing of or transferring the same and also from using the name of the C.I.O., and for further relief in the premises as to the court would seem just.
We have refrained from stating all the allegations in the bill but have mentioned those which we think will show the real controversy on the pleadings as they stood at the opening *Page 106 
of the hearing in the superior court. The respondents, in their answer, neither admitted nor denied but left complainants to their proof of the greater number of the allegations of the bill, most of which were formal; but they did deny the substantial allegations therein of inequitable and malicious conduct on their part, as set out in the provisions of the bill hereinabove stated.
The respondents did not ask for any affirmative relief in their answer and they did not set up therein the invalidity of the contract of March 9, 1937, as an affirmative defense of their conduct in transferring the funds of the Olneyville and Vicinity Joint Board of the T.W.O.C. of the C.I.O. to the Providence Woonasquatucket Woolen Worsted District Council of the C.I.O.; and in taking possession of the tangible personal property of the Joint Board at its office at No. 36 Olneyville Square.
The question of the validity of such contract did not appear as an issue in the cause at all until the commencement of the hearing in the superior court. On that day, before the introduction of evidence, the U.T.W.A. was made a party respondent, over complainants' objection, on the petition of Francis St. Pierre, as president of Local 574 of the U.T.W.A. This petition was neither signed nor sworn to by St. Pierre, nor by any other officer or member of Local 574, and it did not appear from any allegation in the petition that the U.T.W.A. had authorized Local 574 to present this petition in its behalf, or that Local 574 had ever requested its parent body to come in and defend and that such parent body declined; neither did it appear that Local 574, a subordinate unit of the U.T.W.A., was otherwise qualified to represent the international parent body. The only allegation in the petition was that St. Pierre, on behalf of said Local 574 and said U.T.W.A., brought this petition "because of failure and refusal on the part of the officers of said United Textile Workers so to do." On this bare allegation, without evidence in support of it and without notice *Page 107 
of any kind to the U.T.W.A., the trial justice ordered it to be made a party respondent.
Thereupon, the cause proceeded to hearing on the evidence. The complainants' proof showed that the T.W.O.C. had been set up as an organizing body to organize the textile workers and that it had received a charter from the C.I.O. for this purpose; that it had retained Joseph Sylvia as subregional director of its activities in the Olneyville area and that sometime in April 1937 offices were opened and conducted by it at No. 36 Olneyville Square under Sylvia's supervision; that some six locals of the T.W.O.C. were organized in the mills in that area and that, later in 1937, under authority granted them by the T.W.O.C., they federated for organizational purposes as the Olneyville and Vicinity Joint Board of the T.W.O.C. of the C.I.O.; and that respondent Mary Taccone was secretary of this board and respondent Frank Dame was treasurer.
It was further shown that in cooperation with Sylvia, as sub-regional director of the T.W.O.C., these officers conducted the office of the Joint Board, located at No. 36 Olneyville Square, which acted as a central agency in the collection of the dues of individual members of the locals; that a bank account was opened in the name of the Olneyville and Vicinity Joint Board of the T.W.O.C. of the C.I.O. and checks were drawn thereon by Sylvia and Dame in that name; that when the members of the various locals paid their dues they received for them a stamp on which the letters T.W.O.C. were printed; that these stamps were pasted in the individual member's dues-book, and that such dues were received at the office at No. 36 Olneyville Square by either respondent Taccone or some clerk working there under her supervision or the supervision of respondent Sylvia.
If further appeared from the complainants' evidence that the workers understood that they were members of the *Page 108 
T.W.O.C. and that no official protest from any local or from any individual member of a local had ever been received by the T.W.O.C. against the organizational methods which it had adopted and pursued in enrolling textile workers in the Olneyville area as members of locals of the T.W.O.C. Not until June 24, 1938, more than a year following the commencement of its organizational work, did the T.W.O.C. meet with opposition.
The undisputed evidence shows that on that date respondents Sylvia and Dame transferred the bank account of the Olneyville and Vicinity Joint Board of the T.W.O.C. of the C.I.O. into the name of the Providence Woonasquatucket Woolen Worsted District Council of the C.I.O.; that under the latter name they, with respondent Taccone, took possession of the office at No. 36 Olneyville Square and the personal property therein, and placed a sign on the office window conveying the intelligence to the public that it was the office of that council. From that time on it also appears that they began to issue stamps, bearing the letters U.T.W.A. in receipt for members' dues which they continued to collect until restrained, and that they otherwise led the members of the T.W.O.C. locals of the Olneyville and Vicinity Joint Board to believe that the T.W.O.C. no longer existed in the Olneyville area. This continued until the complainants began the present proceedings, when the superior court issued certain orders and decrees to keep the parties instatu quo until this cause could be heard and determined.
Except for an attempt to show that there was some dissatisfaction by certain unnamed individuals, who were finally appeased by President Gorman of the U.T.W.A., the respondents on their part did not really seek to contradict the evidence of the complainants that the T.W.O.C. had been accepted in Olneyville by members of the U.T.W.A.; but rather they sought to show that the T.W.O.C. had no standing as a complainant. In support of this position, *Page 109 
they introduced in evidence, over the objection of the complainants, the contract entered into on March 9, 1937 between the U.T.W.A. and the C.I.O. They then introduced evidence, over the repeated objections of complainants, which was intended to show that at least nine locals of the U.T.W.A. had not ratified such contract and that the international president had no authority to enter into such contract, because it was beyond his constitutional powers under the constitution of the U.T.W.A., which was admitted in evidence. On this evidence they argued that the contract amounted to a virtual disbandment and dissolution of the U.T.W.A. and, hence, was void and of no effect.
After their objections to the admission of such evidence had been overruled, the complainants introduced evidence to show that the contract had been entered into by the president of the U.T.W.A. and that his action had been unanimously approved by the executive council of that body, which, under its constitution, was its supreme body between the regular biennial conventions of the U.T.W.A. They also showed that no subordinate local of the U.T.W.A. had officially protested this action of the international president and the executive council's approval thereof, and that the locals in the Olneyville area had conducted themselves in such a way as to indicate acquiescence therein. The evidence also disclosed that no regular convention of the U.T.W.A. had been held since the effective date of the contract, March 9, 1937, and that no special convention, under the constitution, had been requested.
Having permitted the U.T.W.A. to be made a party, and having admitted the contract in evidence, and also having admitted evidence on the power of the president of the U.T.W.A. to sign it, the trial justice proceeded to determine the controversy between the original respondents and the complainants as being dependent on the validity *Page 110 
of that contract. On that evidence, he found that the president of the U. T. W. A. had no power to bind his organization to such a contract and that therefore such contract was invalid. Whether or not the trial justice's findings were correct on the evidence before him we need not consider, as we are of the opinion that the validity or invalidity of that contract was not properly before the trial justice on the pleadings and the legally admissible evidence in this cause.
A careful examination of the pleadings and the evidence has given us a much clearer conception of the fundamental issue in controversy between the parties than we were able to obtain from the oral arguments of counsel and a cursory inspection of their briefs at the hearing before us. This was probably due to the fact that respondents' counsel approached the controversy from a totally different point of view from that of complainants' counsel. In a way, respondents were seeking to have determined in this cause what may well be a very vital question between the U. T. W. A. and the C. I. O., while the complainants sought only the settlement of what they conceived to be no more than a simple dispute between the T. W. O. C. and some of its individual agents as to the right to possession of certain funds and other personal property. We agree with the view of the complainants.
It was error for the trial justice to order the U. T. W. A. to be joined as a party respondent on the petition of St. Pierre as president of Local 574 of the U. T. W. A. There was no showing by the petitioner St. Pierre that he or Local 574 was authorized to bring the petition to join the parent body as a party respondent. The mere fact that that body had not intervened was not sufficient to justify St. Pierre, as an officer of a subordinate local and apparently on his own motion without notice to the parent body, in petitioning the court that such body be joined as a party respondent. In the circumstances, the petitioner, either individually or *Page 111 
as president of Local 574 of the U.T.W.A., had no standing in court to represent the parent body, and his petition should have been denied.
To allow a subordinate local of an international voluntary association such as the U.T.W.A. to take upon itself the representation of the interest of the parent body, in the manner in which it was allowed in the instant cause, would be productive of confusion and possible chaos in the internal conduct of the affairs of associations of this character. Grave prejudice to the substantial rights of the parent body and its membership might very well result, if such irregular action were to be permitted without any previous recourse to the supreme tribunal within the international organization itself, and in any event without notice to that organization of the court's order joining it as a party. And this would be especially true of a trade union.
The trial justice also erred in considering the validity of the contract of March 9, 1937, because the pleadings did not raise any issue between the U.T.W.A. and the T.W.O.C. The issue raised was merely between the T.W.O.C. and its own agents. It was simply whether the individual respondents, as such agents, had converted certain monies, which they had collected from members of the T.W.O.C. locals, and also personal property of the Joint Board of the T.W.O.C. which was in their custody and control. The determination of that issue in favor of the complainants could not in any way prejudice the U.T.W.A. or foreclose it from setting up any rights which it might have against the T.W.O.C. if the U.T.W.A. should later, in a proper proceeding, urge that the T.W.O.C. had no right to organize the textile workers in the Olneyville area, in the manner in which it had undertaken to organize them, as the agent of the U.T.W.A. and the C.I.O. under the contract of March 9, 1937. And it was not at all necessary in the instant cause to have that issue determined before the court could *Page 112 
properly decide the single issue actually raised by the pleadings.
Indeed, so far as the complainants' bill is concerned, it asserted no claim of the T.W.O.C. antagonistic to the U.T.W.A.; and complainants' evidence tended to show that the T.W.O.C. was operating ostensibly as agent of the U.T.W.A. in its organizational activities in the Olneyville area. Whether or not the T.W.O.C. had construed the contract of March 9, 1937 as effecting the ultimate dissolution of the U.T.W.A. and had acted on such a construction in the manner in which it organized the workers in that area was not a question which respondents Sylvia, Taccone and Dame could possibly raise. Clearly, they were individual agents of the T.W.O.C. and they had themselves participated in those organizational activities.
Moreover, respondent Sylvia was paid by the T.W.O.C. as its sub-regional director in the Olneyville area. If the good faith of the T.W.O.C. under the contract was open to attack at all in this cause, it was open only to attack by the executive council of the U.T.W.A. which, under the constitution of that body, is its supreme tribunal between conventions; or, if the contract itself was open to attack as beyond the power of the president of the U.T.W.A. to execute and of the executive council to approve, it was so in the first instance only within the organization of the U.T.W.A. by an appeal to the convention, which is the supreme legislative and judicial body of the U.T.W.A.
If, however, it could be shown that resort to such means of redress within the organization had been made impossible by the dereliction of their constitutional duties by the president and the executive council, so that a convention could not be called, then, it would be proper for the court to take jurisdiction in the first instance, notwithstanding that no appeal had been taken within the organization, because in such case an appeal in the regular course within that organization was impossible. But even in such a proceeding the *Page 113 
real and necessary parties should be served with notice and given an opportunity to protect their rights.
On the facts in this cause the individual respondents, however, are in no position to urge any of these contentions. Their conduct on and after June 24, 1938, in transferring the funds then on deposit in the Union Trust Company in the name of the Olneyville and Vicinity Joint Board of the T.W.O.C. of the C.I.O. to the Providence Woonasquatucket Woolen Worsted District Council of the C.I.O., and in holding themselves out to textile workers in that area as representing the C.I.O. under such designation, in organizing the textile workers, does not show that they were acting in the interests of the U.T.W.A., free of any association with the C.I.O. under the contract of March 9, 1937, but shows rather the contrary.
Furthermore, there is no evidence in the record that any local in the Olneyville area has ever officially protested the actions of the T.W.O.C. in organizing the textile workers in that area under its authority from the C.I.O. It is true that there is evidence in the record that nine or more locals never officially ratified the actions of the president of the U.T.W.A. in executing the contract of March 9, 1937 with the C.I.O.; but it is also true that there is no evidence of any affirmative action at any time by such locals dissenting from the action of the president and no evidence that any local ever tried to appeal therefrom to the proper judicatory body within the international organization.
On all the evidence, we are clearly of the opinion that there was an apparent acquiescence by the active locals of the U.T.W.A. in the Olneyville area in the organizational work and methods of the T.W.O.C.; and this includes each of the respondents Sylvia, Taccone, and Dame, who were members thereof and who even personally promoted such organizational work as agents of the T.W.O.C. until their action of June 24, 1938, when they first rose in opposition *Page 114 
to the authority of the T.W.O.C. and converted the funds and personal property of the Olneyville and Vicinity Joint Board of the T.W.O.C. which was in their possession as such agents.
What we have said in the paragraph just above is not to be construed as a consideration and determination by us, in any sense, of the validity of the contract of March 9, 1937 or of the title to the funds and personal property. In our opinion, that contract is not an issue on the pleadings in this cause. We have referred to the evidence bearing on the action of locals of the U.T.W.A. in respect to such contract, and the attitude of the individual respondents toward the T.W.O.C. while acting under it, to illustrate the lack of any basis for an argument by these respondents that they were acting to protect the interests of the U.T.W.A., which the respondents claim owned the funds and personal property that they are here charged with converting.
For the reasons above stated, we are of the opinion that the decree entered by the trial justice is based on an erroneous view of the pleadings and the evidence and must be reversed, except as to paragraph 9, wherein these respondents are enjoined from using the designation "C.I.O." or holding themselves out to textile workers as representing in any way the Committee for Industrial Organization in the organization of such workers. That paragraph of the decree is affirmed.
The appeal of the complainants is sustained and the decree appealed from is reversed, except as to said paragraph 9. On June 19, 1940, the parties may present to this court for approval a decree in accordance with this opinion, granting the complainants' prayers in their bill of complaint, for entry in the superior court.